UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ISMAEL REYES,

                  Plaintiff,

       v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

             Defendant.

Case No. SACV 13-960 JC

MEMORANDUM OPINION

## I.  SUMMARY

On July 2, 2013, plaintiff Ismael Reyes ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; July 8, 2013 Case Management Order ¶ 5.

///

///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    ## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE

5    ## DECISION

6        On August 19, 2008, plaintiff filed an application for Disability Insurance

7    Benefits.  (Administrative Record ("AR") 252).  Plaintiff asserted that he became

8    disabled on February 24, 2005, due to a back injury.  (AR 395).  The

9    Administrative Law Judge ("ALJ") examined the medical record and heard

10   testimony from plaintiff (who was represented by counsel) and a vocational expert

11   on June 29, 2010.  (AR 36-56).  On August 20, 2010, the ALJ determined that

12   plaintiff was not disabled through the date of the decision.  (AR 109-17).

13       On November 10, 2011, the Appeals Council granted review, vacated the

14   ALJ's August 20, 2010 decision, and remanded the matter for further

15   administrative proceedings.  (AR 19, 123-24).

16       On May 3, 2012, the ALJ again examined the medical record, and also

17   heard testimony from plaintiff (who was represented by counsel), a medical

18   expert, and a vocational expert.  (AR 57-100).

19       On August 14, 2012, the ALJ again determined that plaintiff was not

20   disabled through the date of the decision.  (AR 19-29).  Specifically, the ALJ

21   found that through plaintiff's date last insured (*i.e.*, September 30, 2010):

22   (1) plaintiff suffered from a severe impairment of multi-level degenerative disc

23   disease of the lumbar spine and right S1 radiculopathy, and a non-severe mental

24   impairment of adjustment disorder (AR 22); (2) plaintiff's impairments,

25

26   _____

       [1]The harmless error rule applies to the review of administrative decisions regarding
27   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
28   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

considered singly or in combination, did not meet or medically equal a listed impairment (AR 23); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. § 404.1567(a)) with additional limitations[2] (AR 23); (4) plaintiff could not perform any past relevant work (AR 27); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically assembler and table worker (AR 28-29); and (6) plaintiff's allegations regarding his limitations were partially not credible (AR 26).

The Appeals Council denied plaintiff's application for review.  (AR 4).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

///

---

[2]The ALJ determined that plaintiff:  (i) could push and pull within the same limits as for lifting and carrying; (ii) could occasionally climb stairs, but not ladders; (iii) could occasionally balance, stoop and kneel; (iv) could not crouch or crawl; and (v) could not work around extreme cold, at unprotected heights, or with vibrating tools or hazardous equipment.  (AR 23).

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)  Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

4

1   error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2   2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

3   (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4   mind might accept as adequate to support a conclusion."  Richardson v. Perales,

5   402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6   mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

7   Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8          To determine whether substantial evidence supports a finding, a court must

9   "'consider the record as a whole, weighing both evidence that supports and

10  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

11  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

15  **IV.   DISCUSSION**

16        **A.    The ALJ Properly Evaluated Plaintiff's Residual Functional**

17              **Capacity**

18              **1.    Pertinent Law**

19          In order to evaluate whether a claimant is able to do past relevant work at

20  step four and/or whether the claimant could adjust to other work that exists in

21  significant numbers at step five, an ALJ must first determine the claimant's

22  residual functional capacity.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545;

23  Social Security Ruling ("SSR") 96-8P at *1.  Residual functional capacity

24  represents "the most [a claimant] can still do despite [his or her] limitations."

25  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's residual functional

26  capacity, an ALJ is required to consider all relevant evidence in the record,

27  including medical records, lay evidence, and the effects of symptoms, including

28  pain, that are reasonably attributed to a medically determinable impairment.

1   Robbins, 466 F.3d at 883 (citations omitted); see 20 C.F.R. § 404.1545(a)(1)

2   (residual functional capacity is assessed "based on all of the relevant evidence in

3   [the] case record.").

4                    **2.    Pertinent Facts**

5           Plaintiff underwent several surgical procedures to address his back pain,

6   specifically:  (i) on August 4, 2006, plaintiff had a total laminectomy of L4 and L5

7   and a partial laminectomy of L3 and S1 (AR 1029-30); (ii) since plaintiff's

8   symptoms persisted and he subsequently developed pseudoarthritis at L5-S1, on

9   June 13, 2008 doctors performed an anterior interbody fusion at L5-S1 and

10  laminectomy at L3-L4 and repaired the foraminotomies at L5-S1 and L4-L5 and

11  fusion at L5-S1 (AR 489-90); and (iii) on January 22, 2009 and January 29, 2010,

12  plaintiff had a rhizotomy and a spinal cord stimulator implantation, respectively.

13  (AR 1502-03, 1561-63).

14          Dr. Mason, the medical expert, testified that the "[e]xertional limitations

15  that would appear to be appropriate for [plaintiff's] condition after multiple

16  surgeries" were that plaintiff could (i) lift and/or carry 20 pounds occasionally and

17  10 pounds frequently; (ii) "stand and walk with normal breaks for at least two

18  hours out of an eight hour day"; (iii) "sit with normal breaks for at least six hours

19  in an eight hour day"; (iv) push and pull within the same limits as for lifting and

20  carrying; (v) occasionally climb ramps and stairs, but not climb ladders, ropes or

21  scaffolds; (vi) occasionally balance, stoop, and kneel but never crawl; and (vii) not

22  be exposed to concentrated extreme cold or vibrating equipment, and needed to

23  avoid exposure to unprotected heights and work in close proximity to hazardous

24  machinery (collectively "Dr. Mason's opinions").  (AR 77-78) (emphasis added).

25          The ALJ gave "significant weight" to Dr. Mason's testimony and adopted

26  Dr. Mason's opinions except for the determination that plaintiff could lift and/or

27  carry 20 pounds occasionally and 10 pounds frequently.  (Compare AR 23 with

28  AR 77-78).  Giving "all reasonable consideration" to plaintiff's subjective

                                    6

1  complaints, the ALJ determined that plaintiff was more properly limited to work at
2  the sedentary[3] level of exertion (AR 23, 26) – *i.e.*, work that "involves lifting no
3  more than 10 pounds at a time and occasionally lifting or carrying articles like
4  docket files, ledgers, and small tools."  See 20 C.F.R. § 404.1567(a).

5           **3.    Analysis**

6           Plaintiff argues that Dr. Mason's testimony only addressed plaintiff's
7  functional abilities for the period of time *after* plaintiff's "multiple surgeries," and,
8  therefore, the ALJ's residual functional capacity assessment – which relied heavily
9  on Dr. Mason's opinions – was not supported by substantial evidence for any time
10  period *before* plaintiff's surgeries.  (Plaintiff's Motion at 4-7).  A reversal or
11  remand is not warranted on this ground.

12          Here, substantial evidence supports the ALJ's residual functional capacity
13  assessment for plaintiff.  At the hearing, Dr. Mason essentially testified that
14  despite multiple "inconsistencies throughout the [medical] record," his opinions
15  regarding plaintiff's functional abilities (most of which the ALJ adopted) were
16  reasonably based on his thorough evaluation of the medical records as informed by
17  his "50 years of experience in orthopedic surgery."  (AR 82-84).  The ALJ's
18  extensive and detailed discussion of the objective medical evidence reflects that
19  Dr. Mason's opinions were, on the whole, supported by, and consistent with such
20  evidence.  (AR 25-26).  Accordingly, Dr. Mason's opinions constituted substantial
21  evidence supporting the ALJ's residual functional capacity assessment for
22  plaintiff.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinions
23  of nonexamining medical expert may serve as substantial evidence when
24  "consistent with other independent evidence in the record"); Morgan v.

25  _____

26          [3]Sedentary work involves "lifting no more than 10 pounds at a time and occasionally
27  lifting or carrying articles like docket files, ledgers, and small tools," "standing or walking . . . no
   more than about 2 hours of an 8-hour workday," and sitting "approximately 6 hours of an 8-hour
28  workday."  20 C.F.R. § 404.1567(a); SSR 83-10 at *5.

                                         7

1    Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.
2    1999) ("Opinions of a nonexamining, testifying medical advisor may serve as
3    substantial evidence when they are supported by other evidence in the record and
4    are consistent with it.") (citation omitted).  Any conflict in the properly supported
5    medical opinion evidence was the sole province of the ALJ to resolve.  See Lewis
6    v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).

7         In addition, the ALJ assessed more restrictive limitations on lifting and
8    carrying than Dr. Mason to account for plaintiff's testimony that he could lift only
9    "[t]en [to] 15 pounds."  (AR 23, 26, 77).  Plaintiff's testimony – which was
10   consistent with the opinions of his treating physicians – constituted substantial
11   evidence supporting the ALJ's findings in this respect.  (AR 26) (citing AR 67;
12   Exhibit 3F at 3 [AR 470] ("[plaintiff] may not lift anything over 20 to 25
13   pounds"); Exhibit 4F at 185 [AR 655] ("Currently, [plaintiff] can lift 15 pounds.");
14   Exhibit 4F at 804 [AR 1274] ("No lifting > 20 lbs"); Exhibit 20F at 4 [AR 1632]
15   ("Presently, [plaintiff] is able to lift and carry 15-20 pounds comfortably.")); cf.
16   Abreu v. Astrue, 303 Fed. Appx. 556, 558-59 (9th Cir. 2008) (claimant's own
17   testimony was substantial evidence supporting ALJ's conclusion that claimant
18   could perform his past relevant work); Morgan, 169 F.3d at 601-02 (ALJ may
19   reject medical opinion that is inconsistent with other evidence of record including
20   claimant's statements regarding daily activities).

21        To the extent plaintiff argues that his condition *before* the surgeries
22   "warranted a lesser [residual functional capacity assessment]" (presumably
23   because plaintiff's condition would have improved once the surgeries were
24   performed) (Plaintiff's Motion at 5), his argument is not supported by the record.
25   Specifically, the record reflects that plaintiff's symptoms "persisted" after the
26   August 4, 2006 procedure.  (AR 490).  Dr. Mason also opined that he did not "see
27   any excellent or outstanding favorable outcomes from [plaintiff's] two surgeries
28   . . . ."  (AR 84-85).  In fact, plaintiff himself testified that surgery did little to

8

alleviate his back pain.  (AR 63 [plaintiff did not "get better" from "first surgery"], AR 71 [first two surgeries "didn't do the job"; spinal cord stimulator "helps, but [] doesn't take the pain away."]).  In any event, the Court will not second-guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

**B.    The ALJ Properly Evaluated Plaintiff's Credibility**

**1.    Pertinent Law**

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect.  Robbins, 466 F.3d at 883 (citations omitted).  Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the

9

1   ALJ rejected the claimant's testimony on permissible grounds and did not

2   arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882,

3   885 (9th Cir. 2004).

4          To find the claimant not credible, an ALJ must rely either on reasons

5   unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

6   contradictions in the testimony, or conflicts between the claimant's testimony and

7   the claimant's conduct (e.g., daily activities, work record, unexplained or

8   inadequately explained failure to seek treatment or to follow prescribed course of

9   treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

10  680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's

11  testimony solely because it is not substantiated affirmatively by objective medical

12  evidence, the lack of medical evidence is a factor that the ALJ can consider in his

13  credibility assessment. Burch, 400 F.3d at 681.

14          **2.    Analysis**

15         Plaintiff contends that a reversal or remand is warranted because the ALJ

16  inadequately evaluated the credibility of his subjective complaints. (Plaintiff's

17  Motion at 7-11). The Court disagrees.

18         First, the ALJ properly discredited plaintiff's subjective complaints of pain

19  due to internal conflicts within plaintiff's own statements and testimony. See

20  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended

21  (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies

22  either in [plaintiff's] testimony or between his testimony and his conduct"); see

23  also Fair, 885 F.2d at 604 n.5 (ALJ can reject pain testimony based on

24  contradictions in plaintiff's testimony). For example, as the ALJ noted, although

25  plaintiff testified at the hearing that he had told his doctors that he had difficulty

26  getting dressed, and that his girlfriend would help him dress, treatment records

27  reflect that plaintiff's reports of difficulty with self-care were infrequent. (AR 26)

28  (citing AR 70; Exhibit 4F at 148, 163, 171, 315 [AR 618, 633, 641, 785]; Exhibit

1   6F at 9, 11, 29, 56 [AR 1372, 1374, 1392, 1419]; Exhibit 11F at 8, 10, 17, 20 [AR

2   1467, 1469, 1476, 1479]; Exhibit 12F at 2, 46, 56, 61 [AR 1482, 1526, 1536,

3   1541]; Exhibit 15F at 7 [AR 1570]; Exhibit 17F at 2 [AR 1599]; Exhibit 18F at 13

4   [AR 1617]).  As the ALJ also noted, although plaintiff reported to one doctor that

5   he had limitations in his ability to travel[4] (see AR 1617 [July 29, 2010 Pain

6   Medicine Re-Evaluation]), other treatment records from around the same time note

7   that plaintiff told doctors he was "going to Texas for [a] family vacation."  (AR

8   26) (citing Exhibit 17F at 2 [AR 1599] (June 24, 2010 Pain Medicine Re-

9   Evaluation); Exhibit 18F at 8 [AR 1612] (August 26, 2010 Pain Medicine Re-

10  Evaluation)).

11       Second, the ALJ properly discounted the credibility of plaintiff's subjective

12  complaints as inconsistent with plaintiff's daily activities and other conduct.  See

13  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between

14  the claimant's testimony and the claimant's conduct supported rejection of the

15  claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999)

16  (inconsistencies between claimant's testimony and actions cited as a clear and

17  convincing reason for rejecting the claimant's testimony).  For example, as the

18  ALJ noted, contrary to plaintiff's allegations of disabling pain, plaintiff stated that

19  he was able to do chores (i.e., wash and fold clothing, wash dishes, some

20  vacuuming), drive a car, take his children to/from school and football practice, and

21  do his own grocery shopping every two weeks.  (AR 26) (citing Exhibits 7E at 3-4

22  [AR 403-04], 4F at 188 [AR 658]).  Plaintiff also testified that he was able to stand

23  and wash dishes for 15-20 minutes at a time.  (AR 68)

24       While plaintiff correctly suggests that a claimant "does not need to be

25  'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044,

26

27           [4]In a disability report, plaintiff also stated that he would "only go out when needed."  (AR

28  416).

11

1050 (9th Cir. 2001) (citation omitted), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony.  See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted).  Here, even though plaintiff stated that he had difficulty functioning, the ALJ properly discounted the credibility of plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment."  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).  While plaintiff suggests that plaintiff's "minimal activities of daily living" are not inconsistent with his allegations of disabling pain (Plaintiff's Motion at 10-11), the Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.

Third, the ALJ properly discounted plaintiff's credibility, in part, due to plaintiff's "unexplained, or inadequately explained, failure to seek treatment."  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing Fair, 885 F.2d at 603).  Here, as the ALJ noted, the record reflects that, shortly after plaintiff's alleged onset date of February 24, 2005, plaintiff failed to show up for several medical appointments.  For example, on March 23, March 29, and March 31, 2005, plaintiff failed to show up for physical therapy appointments.  (AR 1261, 1263).  On May 11, 2005, plaintiff failed to show for a medical appointment with a worker's compensation doctor.  (AR 1248).  A November 28, 2005

12

1    "discharge summary" noted that plaintiff had failed to show up for three physical
2    therapy appointments and that the provider discharged plaintiff because he "[had]
3    not returned for therapy" even after "attempt[s] to follow up on [plaintiff's]
4    status." (AR 1108).  On December 6, 2005, plaintiff failed to show up for and did
5    not reschedule his appointment with an orthopedic surgeon. (AR 1160).  In
6    addition, on April 17, 2008 (*i.e.*, less than two months before plaintiff's second
7    surgery), plaintiff did not show for a "pain medicine re-evaluation." (AR 1378).
8    Plaintiff provides no explanation for the missed appointments except to say that
9    the foregoing was "hardly indicative of [] repeated absences." (Plaintiff's Motion
10   at 11).  The Court will not, however, second guess the ALJ's reasonable
11   determination that the missed appointments "rais[ed] the question of whether the
12   symptoms described [were] actually as severe as [plaintiff] alleged." (AR 26).

13        Fourth, to the extent the ALJ discounted plaintiff's credibility because
14   plaintiff did not receive treatment after his workers' compensation claim settled in
15   2011 (AR 26), any error in doing so was harmless.  At the hearing plaintiff
16   testified that he did not seek medical treatment after his workers' compensation
17   case closed because he was unable to afford such treatment. (AR 74).  An ALJ
18   may not reject symptom testimony where, like here, a claimant provides "evidence
19   of a good reason for not [seeking treatment]." see Smolen v. Chater, 80 F.3d 1273,
20   1284 (9th Cir. 1996) (citations omitted).  Nonetheless, the remaining reasons
21   identified by the ALJ for discounting the credibility of plaintiff's subjective
22   symptom testimony are supported by substantial evidence and any such error
23   would not negate the validity of the ALJ's ultimate credibility conclusion in this
24   case.  See Molina, 674 F.3d at 1115 (citations omitted) (Where some reasons
25   supporting an ALJ's credibility analysis are found invalid, the error is harmless if
26   (1) the remaining "valid" reasons provide substantial evidence to support the
27   ALJ's credibility conclusions, and (2) "the error does not negate the validity of the
28   ALJ's ultimate [credibility] conclusion.") (quoting Batson v. Commissioner of

1   Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004)) (citation and
2   internal quotation marks omitted).

3       Finally, the ALJ properly discounted plaintiff's credibility in part because
4   plaintiff's pain allegations were not fully corroborated by the objective medical
5   evidence.  See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot
6   be rejected on the sole ground that it is not fully corroborated by objective medical
7   evidence, the medical evidence is still a relevant factor in determining the severity
8   of the claimant's pain and its disabling effects.") (citation omitted).  For example,
9   as the ALJ noted, although plaintiff complained of "significant restrictions [in]
10  standing and walking," one of plaintiff's pain specialists and an agreed medical
11  examiner for plaintiff's workers' compensation case each found that plaintiff was
12  only precluded from "prolonged standing."  (AR 26) (citing Exhibits 3F at 3 [AR
13  170], 4F at 194 [AR 664]).

14      Accordingly, a remand or reversal on this basis is not warranted.

15  **C.    The ALJ Properly Evaluated the Medical Expert's Testimony**
16          **1.    Pertinent Law**

17      In Social Security cases, courts employ a hierarchy of deference to medical
18  opinions depending on the nature of the services provided.  Courts distinguish
19  among the opinions of three types of physicians:  those who treat the claimant
20  ("treating physicians") and two categories of "nontreating physicians," namely
21  those who examine but do not treat the claimant ("examining physicians") and
22  those who neither examine nor treat the claimant ("nonexamining physicians").
23  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A
24  treating physician's opinion is entitled to more weight than an examining
25  physician's opinion, and an examining physician's opinion is entitled to more
26  weight than a nonexamining physician's opinion.  See id.

27      "The Commissioner may reject the opinion of a nonexamining physician by
28  reference to specific evidence in the medical record."  Sousa v. Callahan, 143 F.3d

14

1  1240, 1244 (9th Cir. 1998).  However, while "not bound by findings made by
2  State agency or other program physicians and psychologists, [ALJs] may not
3  ignore these opinions and must explain the weight given to the opinions in their
4  decisions."  SSR 96-6p; <u>see also</u> 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)
5  ("State agency medical and psychological consultants and other program
6  physicians and psychologists are highly qualified physicians and psychologists
7  who are also experts in Social Security disability evaluation.  Therefore,
8  administrative law judges must consider findings of State agency medical and
9  psychological consultants or other program physicians or psychologists as opinion
10  evidence. . . .");  <u>Sawyer v. Astrue</u>, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An
11  ALJ is required to consider as opinion evidence the findings of state agency
12  medical consultants; the ALJ is also required to explain in his decision the weight
13  given to such opinions.").

## 2.  Analysis

15    Plaintiff testified that to alleviate his back pain he needed to lie down and
16  elevate his legs for 45 minutes to an hour, three or four times a day, every other
17  day.  (AR 68-69).  During cross-examination of the medical expert, plaintiff's
18  attorney stated "[plaintiff] mentioned a lot of the [sic] shifting positions, the lying
19  down, the elevating feet" and asked if plaintiff's statements "would [] be
20  consistent with the orthopedic impairments . . . in the medical file?"  (AR 87).  Dr.
21  Mason answered "Yes, I have no inconsistency with that."  (AR 87).

22    Plaintiff argues that a reversal or remand is warranted because (1) Dr.
23  Mason's answer on cross-examination reflected that Dr. Mason effectively
24  adopted plaintiff's assertions that he regularly needs to shift positions, lie down
25  and elevate his feet; and (2) the ALJ failed properly to account for such limitations
26  found by Dr. Mason.  (Plaintiff's Motion at 12).  The Court disagrees.

27    Here, Dr. Mason's testimony that there was "no inconsistency" between
28  plaintiff's orthopedic impairments and his alleged need for "shifting positions,"

1  "lying down," and "elevating feet" does not reasonably suggest that Dr. Mason
2  adopted such subjective symptoms as the expert's own opinion about plaintiff's
3  functional limitations.  On direct examination Dr. Mason testified about plaintiff's
4  residual functional capacity (which did not include opinions related to the alleged
5  limitations) and punctuated the end of his opinion testimony about plaintiff's
6  functional limitations by stating "and that's what I have to say."  (AR 77-78).
7  Even assuming Dr. Mason's testimony could be interpreted in the way plaintiff
8  proposes, the Court will not second guess the ALJ's contrary interpretation which
9  is also supported by the hearing transcript.  It was the ALJ's exclusive role to
10 resolve any inconsistencies in Dr. Mason's testimony.  See Lewis, 236 F.3d at
11 509.

12        Accordingly, a remand or reversal on this basis is not warranted.

13 **V.    CONCLUSION**

14        For the foregoing reasons, the decision of the Commissioner of Social
15 Security is affirmed.

16        LET JUDGMENT BE ENTERED ACCORDINGLY.

17 DATED:  March 11, 2014

18                                    _____/s/_____
19                                    Honorable Jacqueline Chooljian
20                                    UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26
27
28

                                    16